IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
WESTERN DIVISION

LADONN HARRIS, et al.,

                      Plaintiff,                Case No. 3:08 CV 1951

    -vs-

                                            <u>MEMORANDUM OPINION</u>

TOLEDO NIGHTS, INC., et al.,

                    Defendant.

KATZ, J.

This matter is before the Court on the Toledo Nights, Inc., Port Huron Nights, Inc., and Akram Namou ("Defendants") motion for partial summary judgment (Doc. 65), Plaintiffs opposition (Doc. 68), and Defendants' reply (Doc. 72) as well as the Plaintiff LaDonn Harris ("Harris") and Plaintiff Gary Boughner ("Boughner") motion for partial summary judgment (Doc. 66), Defendants" opposition (Doc. 67), and Plaintiffs' reply (Doc. 69); Plaintiffs and Defendants move for summary judgment on sets of claims with no overlap. The Court notes federal question jurisdiction under 28 U.S.C. §1331 and proper venue under 28 U.S.C. §1391.

**I. Summary Judgment Standard**

Summary judgment is appropriate where "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." FED. R. CIV. P. 56(c). The moving party bears the initial responsibility of "informing the district court of the basis for its motion, and identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if

any,' which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). The movant may meet this burden by demonstrating the absence of evidence supporting one or more essential elements of the non-movant's claim. *Id.* at 323-25. Once the movant meets this burden, the opposing party "must set forth specific facts showing that there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986) (*quoting* FED. R. CIV. P. 56(e)).

Once the burden of production has so shifted, the party opposing summary judgment cannot rest on its pleadings or merely reassert its previous allegations. It is not sufficient "simply [to] show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). Rather, Rule 56(e) "requires the nonmoving party to go beyond the pleadings" and present some type of evidentiary material in support of its position. *Celotex*, 477 U.S. at 324; *see also Harris v. General Motors Corp.*, 201 F.3d 800, 802 (6th Cir. 2000). Summary judgment must be entered "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex*, 477 U.S. at 322.

"In considering a motion for summary judgment, the Court must view the facts and draw all reasonable inferences therefrom in a light most favorable to the nonmoving party." *Williams v. Belknap*, 154 F. Supp. 2d 1069, 1071 (E.D. Mich. 2001) (citing *60 Ivy Street Corp. v. Alexander*, 822 F.2d 1432, 1435 (6th Cir. 1987)). However, "'at the summary judgment stage the judge's function is not himself to weigh the evidence and determine the truth of the matter,'" *Wiley v. U.S.*, 20 F.3d 222, 227 (6th Cir. 1994) (quoting *Anderson*, 477 U.S. at 249); therefore, "[t]he Court is not required or permitted . . . to judge the evidence or make findings of fact."

*Williams*, 154 F. Supp. 2d at 1071. The purpose of summary judgment "is not to resolve factual issues, but to determine if there are genuine issues of fact to be tried." *Abercrombie & Fitch Stores, Inc. v. Am. Eagle Outfitters, Inc.*, 130 F. Supp. 2d 928, 930 (S.D. Ohio 1999). Ultimately, this Court must determine "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson*, 477 U.S. at 251-52; *see also Atchley v. RK Co.*, 224 F.3d 537, 539 (6th Cir. 2000).

**II. Background**

In accord with the summary judgment standard, the facts are laid out in the light most favorable to Plaintiffs with regard to the claims covered by Defendants' motion and most favorable to Defendants' with regard to Plaintiffs' motion.

In late 2005, Plaintiff Harris began working at the Port Huron Days Inn as a front desk clerk. She was later promoted to front desk manager. In September of 2007 she was transferred to the Toledo Days Inn, where she worked until October 19, 2007. The Port Huron Days Inn is owned by Defendant Port Huron Nights, Inc. and the Toledo Days Inn is owned by Defendant Toledo Nights, Inc. Defendant Akram Namou owns both companies, in addition to various other hotels and portions of hotel companies. Plaintiff Boughner, Harris's husband, occasionally worked as a handyman at the Port Huron Days Inn from the time Harris worked there up to September 27, 2007.

While working in Port Huron, Harris earned a steadily increasing hourly wage. Akram Namou employed Hikmat "Simon" Simaan (Simaan) to manage the Port Huron Days Inn for the whole time Harris worked there and the Toledo Days Inn for the first part of Harris's employment there. The transfer from Port Huron to Toledo moved Harris from wage to salary. Boughner

3

earned an hourly wage during the whole of his employment at the Port Huron Days Inn. When he gave two weeks notice, so that he could move to Toledo to be with Harris, Simaan fired him on the spot.

Shortly after Harris began working at the Port Huron Days Inn, she and Boughner moved into a room in one of the secondary buildings. She also moved into a room in the Toledo Days Inn after her transfer and Boughner joined her there some time later. While these arrangements were not common, Plaintiffs are not the only people (or employees) to have lived at one of Akram Namou's hotels. In order to pay for these accommodations, at least at the Port Huron Days Inn, Harris's hours worked were reduced. The parties disagree as to how much the hours were reduced and by whom. Simaan stated that Harris suggested the arrangement as a way of reducing her income which could be subject to garnishment and/or taxes.

Some time after Harris transferred to Toledo, the parties disagree on the date, TJ Zebari ("Zebari") became the general manager of the Toledo Days Inn. Shortly thereafter, he began behaving inappropriately toward Harris. First, a couple of days after he started, while passing Harris in a hallway, Zebari brushed his chest against hers unnecessarily; Harris asked him why and he did not respond. A few days later, Harris looked up from some paperwork to see Zebari attempting to look down her shirt. She moved to prevent his view and neither said anything. Soon after, Zebari called Harris into his office and began asking her questions about her marriage and making sexual innuendo concerning her lips.[1] She told him to stop talking about her marriage or her lips and threatened to file a complaint and he said "people that give me a problem, I can

---

[1] "[H]e told me how sexy my lips were and I bet I'd be a really good kisser and I wonder what else your lips can do." Harris Dep. at 129.

make them disappear. I used to work for the government." Harris Dep. at 129-30. Harris called Simaan, but took no other action. Later, in the presence of Boughner, Zebari asked Harris, just after she finished her shift, to get him something to eat and called her "sweetie."

Further, during the rest of the time they worked together, approximately once per day, Zebari would say some permutation of "you look pretty today," "you look sexy," or "nice lipstick." Finally, on October 18, 2007, Zebari once more asked Harris into his office. He then reiterated his claim of being able to make people disappear because he worked for the government and then asked if Harris had brought her husband to live with her in Toledo. She acknowledged that she had and he said "that's all I needed to know." *Id*. at 143. The next day, he fired her saying "we just don't need you anymore." *Id*. at 145. She asked if this was because she denied his advances, the only time she claims they ever explicitly discussed the issue, and he did not answer except to say "it's your word against mine." *Id.* at 147.

Plaintiffs are Caucasian and Akram Namou, Simaan, and Zebari are of Middle Eastern descent.

Plaintiffs sued Defendants claiming violations of Title VII of the Civil Rights Act of 1964 (Title VIII), 42 U.S.C. §1981, O.R.C. §4112, Michigan's Elliot Larson Civil Rights Act (ELCRA), the Fair Labor Standards Act, and Emotional Distress.

**III. Discussion**

    **A. Title VII claims**

*Sexual harassment*

Title VIII allows for claims for sexual harassment for both creation of a hostile work environment and for economic *quid pro quo*. *Meritor Sav. Bank, FSB v. Vinson*, 477 U.S. 57, 65

5

(1986). The distinction between the two types of cases merely stands for the way in which the sexual harassment alters the terms of a plaintiff's employment based on gender, either constructively or explicitly. *Burlington Indus., Inc. v. Ellerth*, 524 U.S. 742, 752 (1998). Plaintiff Harris alleges both that Zebari constructively altered the terms of her employment - hostile environment harassment through Counts 2, 4, and 6 - and explicitly threatened to, and later did, alter those terms (by firing her) in a manner related to her gender (requesting sexual favors) - *quid pro quo* harassment through Count 1.

Defendants respond to these claims by both by raising a couple of technical defenses including the number of employees required for a Title VII action and administrative exhaustion in addition to attacking Harris's *prima facie* case. However, Defendants' only assert the first defense (number of employees) against Counts 2, 3, 4, 5, and 9. While the defense of administrative exhaustion limits the scope of a Title VII action, the limit holds the claim to what the EEOC complaint mentions (and anything "reasonably expected to out of the charge") *Davis v. Sodexho Cumberland Coll. Cafeteria*, 157 F.3d 460, 463 (6th Cir. 1998) (internal quotation omitted). Here, Harris's EEOC claim clearly states sexual harassment (and only sexual harassment) as the basis for her grievance.

To make out a *prima facie* case of constructive (hostile environment) sexual harassment under Title VII, Harris must show: "(1) she is a member of a protected class, (2) she was subjected to unwelcome sexual harassment, (3) the harassment was based on her sex, (4) the harassment created a hostile work environment, and that (5) the employer is vicariously liable." *Clark v. UPS, Inc.*, 400 F.3d 341, 347 (6th Cir. 2005) (citing *Williams v. Gen. Motors Corp.*, 187 F.3d 553, 560-61 (6th Cir. 1999)). The fourth element requires a hostile environment so abusive as to amount to

6

a "discriminatory changes in the 'terms and conditions of employment,'" as opposed to "'simple teasing,' offhand comments, and isolated incidents." *Faragher v. City of Boca Raton*, 524 U.S. 775, 788 (1998) (quoting *Oncale v. Sundowner Offshore Servs., Inc.*, 523 U.S. 75, 81 (1998)). It also requires an environment which is "both objectively and subjectively offensive." *Id.* at 787 (citing *Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 21-22 (1993)). In determining "whether an environment is sufficiently hostile or abusive" the Court considers all of the circumstances "including the 'frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating ... and whether it unreasonably interferes with an employee's work performance.'" *Id.* (quoting *Harris*, 510 U.S. at 23).

In asserting that Zebari created a hostile environment, Harris names five specific incidents: (1) a brief chest to chest contact in a hall initiated by Zebari; (2) an attempt to peek down her bouse; (3) a conversation involving personal questions, some sexual innuendo, and a vague threat; (4) a request for a meal just after her shift ended in which he called her "sweetie;" and (5) one more brief personal conversation. Further, she mentions daily compliments such as "you look sexy." Harris's allegations are quite similar to those alleged in *Stacy v. Shoney's, Inc.*, 142 F.3d 436, 1998 WL 165139 (6th Cir. 1998) (table). In that case, Stacy alleged that her manager touched her chest on the pretense of examining her pen, commented on her tan and his desire to see more of it, and made several other inappropriate personal comments. *Id*. The Sixth Circuit found that such "comments were offensive, but not sufficiently frequent, severe, physically threatening, or humiliating to unreasonably interfere with Plaintiff's work performance to constitute actionable work place harassment." *Id*. Plaintiff's only attempt to distinguish *Stacy* relates to an employer's reaction to complaints and its implications for vicarious liability, the fifth element of the *prima*

7

*facie* case for hostile environment sexual harassment, rather than the objective level of hostility of the work environment, the fourth element.

Because Harris fails to satisfy the fourth element of a *prima facie* case for hostile environment sexual harassment, the Court will grant the Defendants summary judgment on that claim.

In Count 1, Harris also alleges explicit (*quid pro quo*) sexual harassment in that she claims that Zebari fired her due to her claimed rejection of his advances. A *prima facie* case of explicit sexual harassment requires an employee to show:

> 1) that the employee was a member of a protected class; 2) that the employee was subjected to unwelcome sexual harassment in the form of sexual advances or requests for sexual favors; 3) that the harassment complained of was on the basis of sex; 4) that the employee's submission was an express or implied condition for receiving job benefits or that the employee's refusal to submit to the supervisor's sexual demands resulted in a tangible job detriment; and 5) the existence of *respondeat superior* liability.

*Bowman v. Shawnee State Univ.*, 220 F.3d 456, 461 (6th Cir. 2000) (citing *Kauffman v. Allied Signal, Inc.*, 970 F.2d 186 (6th Cir. 1992)). Defendants' only reference to any part of this test is their response to Counts 12 and 13 which fails to address the principles of Title VII vicarious liability from *Faragher* and *Ellerth*.[2] In addition, Defendants fail to present an alternative justification as permitted by the standard Title VII analysis framework. *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802 (1973). Thus, the Court denies the Defendants summary judgment on Harris's claim of *quid pro quo* (explicit) sexual harassment.

*Retaliation*

---

[2] An employer is liable under Title VII for the acts of a supervisor, especially when they result in "tangible employment action." *Ellerth*, 524 U.S. at 762; *Faragher*, 524 U.S. at 807.

8

"Title VII's anti-retaliation provision forbids employer actions that 'discriminate against' an employee ... because he has 'opposed' a practice that Title VII forbids or had 'made a charge, testified, assisted, or participated in' a Title VII 'investigation, proceeding, or hearing.'" *Burlington N.& Santa Fe Ry. Co. v. White*, 548 U.S. 53, 59 (2006) (quoting §2000e-3(a)). Thus, a *prima facie* case for Title VII retaliation requires that a plaintiff show "(1) [he or] she engaged in activity protected by Title VII; (2) this exercise of protected rights was known to defendant; (3) defendant thereafter took adverse employment action against the plaintiff ... and (4) there was a causal connection between the protected activity and the adverse employment action." *Morris v. Oldham County Fiscal Court*, 201 F.3d 784, 792 (6th Cir. 2000). Proof of the first element requires plaintiff engage in one of the two protected activities noted above: opposition of a practice or participation in a Title VII "investigation, proceeding, or hearing." *Id*. (quoting §2000e-3(a)).

Plaintiff Boughner alleges that when he gave Simaan his two week notice, he was fired on the spot. There is no hint of a protected activity in his allegation. In opposing summary judgment, Boughner merely "submits his deposition testimony and the Defendants (sic) lack of credibility as evidence that a genuine issue of material fact exists" as to his claim of retaliation. Doc. 68 at 16. Boughner completely misunderstands his burden at this point - he must show the Court that he can establish a *prima facie* case of retaliation. His failure to point to any Title VII protected activity means that summary judgment will be granted on his Title VII retaliation claim.

*Differential treatment*

In addition to their above specific claims, both Plaintiffs also allege a host of differential treatment claims based on any differences between them and Akram Namou, Simaan, and Zebari. Defendants' respond with their technical defenses and attacks on Plaintiffs' *prima facie* cases.

9

Because Plaintiffs' fail to establish *prima facie* cases for discrimination under Title VII, the Court will not address any of the other arguments.

In order to establish a *prima facie* case for discrimination under Title VII, Plaintiffs must point to a person, similar in all respects except the quality upon which the discrimination rests, whom Defendants treated better. *Mitchell v. Toledo Hosp.*, 964 F.2d 577, 582-83 (6th Cir. 1992). In other words, both would have to point to a non-white or non-American for their race/national origin claims, and Harris would have to point to a man, who either did not suffer some negative action Plaintiffs suffered, received more pay for the same work than Plaintiffs did, or replaced one of the Plaintiffs. At most, Plaintiffs assert, without specifics, that employees of Middle Eastern descent received better treatment and that maybe a man who was Harris's predecessor received more money. Because Plaintiffs fail to establish at least one element of the *prima facie* case of disparate treatment under Title VII, the Court awards summary judgment on those claims to Defendants.

*Other Claims Subject to Title VII Standards*

Plaintiffs list more than just Title VII for most of their causes of action. Generally, they count off O.R.C. §4112.02, Michigan's Elliot Larson Civil Rights Act, and 42 U.S.C. §1981 for most of the Title VII counts. In addition, Count 5 alleges wage discrimination based on sex under 29 U.S.C. §206(d). First, the Court grants Defendants summary judgment on Boughner's Ohio claims and Harris's Michigan sexual harassment claims because Boughner only raises claims related to employment at the Port Huron Days Inn and Harris only alleges sexual harassment at the Toledo Days Inn. All of the other claims under the additional statutes employs the same standards as Title VII. *Plumbers & Steamfitters Joint Apprenticeship Comm. v. Ohio Civil Rights Comm'n*,

10

421 N.E. 2d 128, 131 (Ohio 1981) (O.R.C. §4112 requires "evidence sufficient to support a finding of discrimination under Title VII); *Hopson v. Daimlerchysler Corp.*, 306 F.3d 427, 438 (6th Cir. 2002) (citing *Hazle v. Ford Motor Co.*, 628 N.W.2d 515, 521-22 (Mich. 2001)) (Michigan imposes a higher burden on plaintiffs after the *prima facie* stage, but otherwise uses Title VII analysis); *Dews v. A.B. Dick Co.*, 213 F.3d 1016, 1020 n.2 (6th Cir. 2000) ("The standards fo Title VII are equally applicable to Dews' claims under 42 U.S.C. §1981"); *Odomes v. Nucare, Inc.*, 653 F.2d 246, 250 (6th Cir. 1981) ("analysis of a claim of unequal pay for unequal work is essentially the same under both the Equal Pay Act [42 U.S.C §206] and Title VII"). Thus, other than Harris's *quid pro quo* sexual harassment claim other than Michigan, all of these claims fail as described above and the Court grants Defendants summary judgment on such claims. In addition, the Court refuses summary judgment on Harris's *quid pro quo* sexual harassment claim (Count 1) for the same reasons as described above (other than under Michigan law).

### B. Infliction of Emotional Distress

Despite bearing the subtitle of Negligent Infliction of Emotional Distress, Defendants believe that Plaintiffs' Count 11 involves Intentional Infliction of Emotional Distress. Doc. 65 at 20. This distinction does not matter because under Ohio law[3] both claims require proof of "serious" emotional distress. *Miller v. Currie*, 50 F.3d 373, 378 (6th Cir. 1995) (citing *Paugh v. Hanks*, 451 N.E.2d 759, 761 (Ohio 1983)).[4] While such "serious" emotional injury need not manifest physical symptoms, to sustain either emotional distress claim, Plaintiffs must prove that

---

[3] Ohio law applies because Plaintiffs rely on Zebari's actions for this claim.

[4] *Miller* involved Intentional Infliction of Emotional Distress and *Paugh* involved Negligent Infliction of Emotional Distress

11

their injuries "go beyond trifling mental disturbance, mere upset or hurt feelings." *Paugh*, 451 N.E.2d at 765. Such distress must be "severe and debilitating." *Id.* Plaintiffs merely present their testimony as to their disturbance and upset without describing any symptoms or demonstrating any debilitation. Due to Plaintiffs' inability to prove sufficient emotional distress, the Court grants Defendants summary judgment on Count 11.

### C. Claims 12 and 13

Counts 12 and 13 include a confusion of ideas which, while relevant, are not separate causes of action. Each asserts "*respondeat superior*" against Akram Namou and either Toledo Nights or Port Huron Nights. Defendants construe these as attempts to hold Akram Namou liable under Title VII in his individual capacity. The Court reads them differently. These Counts relate to vicarious liability under Title VII and attempts to pierce the corporate veil. Vicarious liability is merely an element of a Title VII case involving the actions of an employee of a defendant. *See Faragher*, 524 U.S. at 807. Further, Defendants merely argue that piercing the veil does not make Akram Namou liable directly to Plaintiffs should they succeed; Defendants ignore the possibility of Plaintiffs succeeding against either Port Huron Nights or Toledo Nights and then attempting to pierce the corporate veil.

The Court will grant the Defendants summary judgment on Counts 12 and 13, but without passing on any vicarious liability which may remain as part of Plaintiffs' surviving discrimination claims or any attempts to pierce the corporate veil in any of Plaintiffs' other surviving claims.

### D. Plaintiffs' motion

Plaintiff Harris moves for summary judgment claiming she was not paid for hours she worked. She presents a set of time cards and pay stubs with no further explanation other than a

reference to the minimum wage. There is no mention of the elements of a claim, be it under federal statute or contract, or how the undisputed facts, or the facts as alleged by <u>Defendants</u> rather than Plaintiffs, fit such claims. Thus, summary judgment will be denied on this claim.

**IV. Conclusion**

For the reasons discussed herein, Defendant's motion for partial summary judgment (Doc. 65) is hereby granted with respect to Counts 1 (under Michigan Law), 2, 3,4,5,6,9,11,12, 13 and denied as to Count 1 (under federal and Ohio law). Plaintiffs' motion for partial summary judgment (Doc. 66) is denied in its entirety.

IT IS SO ORDERED.

    S/ *David A. Katz*
    DAVID A. KATZ
    U. S. DISTRICT JUDGE